## THE PEOPLE vs. PARISH.

The acts or declarations of a supposed agent or joint conspirator cannot be received in evidence until proof has been first given to establish the agency or combination. In such cases the *order* of producing the evidence is not a matter of discretion. *Semble. Per* BRONSON, C. J.

Therefore where the prosecution seeks to prove false pretences made to the prosecutor by a third person by the procurement of the defendant, it must be first shown that the defendant instigated such person to make them. *Per* BRONSON, C. J.

An error committed by the admission of incompetent evidence in a court of record against an objection by the opposite party, is cured and an exception thereto rendered nugatory, by a subsequent direction to the jury to disregard such evidence. The rule is otherwise in justices' courts, for special reasons applicable to those courts. *Per* BRONSON, C. J.

Where an indictment for cheating by false pretences, alleged that the defendant had falsely represented one Miner, of the town of Pike, to be responsible for a sum of money, and the public prosecutor was allowed to ask a witness examined on his part this question, though objected to as leading; "Had Miner absconded from Pike in July, 1842 ?" *Held*, that the question was improper for the reason stated in the objection.

An indictment for false pretences need not state *all* the property which the defendant obtained by the false pretences set forth.

CERTIORARI to Wayne oyer and terminer, where the defendant was convicted in September, 1845, of having obtained the property of Rice and Ladue by false pretences. The substance of the charge was, that Rice owned a farm of 72 acres of land in Potter, Yates county; and Ladue owned 220 acres of land in the state of Michigan. In October, 1842, a negotiation was opened between Rice and Ladue on the one part, and the defendant of the other part, for the sale and purchase of those lands; and the defendant proposed to purchase, and pay for the same by assigning to Rice and Ladue two bonds and mortgages— one bond and mortgage executed by *John M. Miner*, dated July 1, 1842, on certain lands in Eagle, Alleghany county, conditioned for the payment of $2447 : the other bond and mortgage executed by *Edmund Barber*, dated June 7, 1842, on certain lands in Summerhill, Cayuga county, conditioned for the payment of $3500. On this mortgage there was endorsed, on the day of its date, $1000. Rice and Ladue knew nothing

of the obligors, nor of the mortgaged premises. And the defendant, with intent to cheat and defraud, &c. made false pretences and representations in relation to the responsibility of the obligors in the bonds, and in relation to the description, state of improvement, and value of the lands mortgaged. It was also charged that he procured one Hadden to make false representations on the same subject to Rice and Ladue with the like intent. By which means Rice and Ladue were induced to, and did sign the deeds, and sell and convey the said lands in Potter and Michigan to the defendant. The falsity of the pretences was then alleged.

On the trial the district attorney, among other things, proposed to show what representations were made to Rice and Ladue, by Hadden. The defendant objected to this evidence, until it should be first shown that he had induced Hadden to make the representations. The court overruled the objection; and the witness stated what Hadden had said to Rice and Ladue, while the negotiation was pending. The defendant excepted. The court afterwards charged the jury, that the declarations of Hadden must be laid out of the case, as he had not been produced to show that he was induced by the defendant to make the declarations—they having been received on the statement of the district attorney that he expected in the course of the trial to produce Hadden to make such proof.

The district attorney called Marvin Trall as a witness; and put to him the following question in relation to Miner, one of the mortgagors: "Had Miner absconded from Pike in July, 1842?" The defendant objected to the question as *leading*, irrelevant, &c. The court overruled the objection; and the witness answered, "I knew he went away one day before October, 1842; he was a trading, trafficking man—sometimes he had property, and sometimes not."

The district attorney was allowed, the defendant objecting, to prove a judgment in a justice's court against Miner in the spring of 1842, and an execution upon it, returned *nulla bona.* He was also allowed to prove by a constable, that he had several executions against Miner about the same time. Also

that the defendant had said in July, 1842, that Miner had run away.

The district attorney asked the defendant's brother, who was a witness for the defendant, the following question : "What did Barbour give your brother for the land ?" The court overruled the defendant's objection to the question ; and the witness answered, that he gave over $3000 : that he paid $1000 in Michigan land and a horse and harness, which was endorsed on the mortgage. There was such an endorsement on the Barbour mortgage at the time of the trade.

After the district attorney had rested, and the defendant had given evidence, the district attorney was allowed to re-examine one of his witnesses, by way of answer to the defendant's evidence. The district attorney was also allowed to call a new witness by way of reply to the defendant's evidence.

The district attorney was also allowed to prove a conversation between the defendant and one Furman, about the bonds and mortgages, a short time before they were transferred to Rice and Ladue : and what Furman then said about the mortgages in the defendant's presence. The answer of the witness was, Furman said the mortgages were good, and he would not be afraid to take them.

In making the trade, there was a balance of $600 going to the defendant. Rice and Ladue gave the defendant their note for $100, and the defendant reserved, verbally, $500 out of the payments which might be made on the mortgages. As these facts were not mentioned in the indictment, the defendant insisted that there was a fatal variance. But the court overruled the objection.

On all of these points the defendant excepted. And he also excepted to the charge to the jury. The jury found the defendant guilty, and he now moves for a new trial on a bill of exceptions.

*T. R. Strong*, for the defendant.

*J. M. Holly*, (district attorney,) for the people.

*By the Court,* BRONSON, Ch. J. It was improper to give in evidence the representations made by Hadden, without first showing that he acted by the procurement of the defendant; and the exception to the evidence would have been fatal, had it not been for the instruction subsequently given to the jury, that the declarations of Hadden must be laid out of the case. I think that cured the error. It is undoubtedly true, as a general rule, that when improper evidence has been admitted, the objection will be fatal on a bill of exceptions, although we cannot see that it probably affected the verdict. (*Myers* v. *Malcolm,* 6 *Hill,* 292.) But that is where the evidence has not only been received, but has been left to exert its influence upon the jury. It is not unusual for a judge to correct an error into which he may have fallen in the admission of evidence, by striking the testimony out of his minutes, and telling the jury to disregard it. When that is done, the exception which was taken when the evidence was received should fall to the ground. We ought not to presume that the jurors disregarded the instructions of the court, and allowed the evidence to influence their verdict. But the defendant's counsel thinks it settled, that the error was not cured by telling the jury to lay the declarations of Hadden out of the case. (*Haswell* v. *Bussing,* 10 *John.* 128; *Penfield* v. *Carpender,* 13 *id.* 350; *Irvine* v. *Cook,* 15 *id.* 239; *Tuttle* v. *Hunt,* 2 *Cowen,* 436.) But these are all cases from justices' courts, where it is not to be supposed that the opinions of the presiding officer will have the same controlling influence upon the jury, as will the instructions of the judge who presides on trials in courts of record. The counsel was unable to produce any case where the same doctrine had been held in relation to trials in a superior court: and it would be a most inconvenient rule, and one which would rarely tend to the advancement of justice, to hold that a mistake in the admission of evidence can only be corrected by discharging the jury, and commencing the trial *de novo.*

Another ground has been suggested for getting rid of the exception; to wit, that it only presents a question upon the order of evidence, which, as a general rule, rests in the discretion of

the judge. But I doubt whether it is within the discretion of the judge, to receive in evidence the acts or declarations of a supposed agent or joint conspirator, before either direct or presumptive evidence has been given to establish the agency or combination. It is not, however, necessary to go into that question at this time; for we think the error was cured by withdrawing the declarations of Hadden from the consideration of the jury.

The question put to Trall was a leading one: it plainly suggested to the witness the answer which the district attorney wished to get from him. But the question worked no mischief; for the witness did not give the desired response. If he had echoed back the words put into his mouth by the form of the question, the exception could not have been got over. But as it is, I think the exception ought not to prevail.

The inquiry was not irrelevant. It was much to the purpose to show, as was done on the trial, that Miner had absconded, and the defendant knew it before he put off the bonds and mortgages under the pretence, among others, that Miner was responsible, and would meet the payments promptly.

Nor do I see any good objection to the proof which was given, that there were judgments and executions against Miner about the time he left the county in the summer of 1842. This was connected with evidence that he had absconded; and that the defendant knew it. The fact that the defendant knew it was proved by his own declaration. He excepted to the admission of that evidence; but there is no color for saying it was improper.

It was not, perhaps, important to show what Barbour paid for the land which he mortgaged. But the answer of the witness was altogether favorable to the defendant. It tended to prove that the land was worth more than the amount which remained due on the mortgage at the time it was transferred to Rice and Ladue.

It was clearly within the discretion of the court to allow the district attorney to re-examine a witness, or to call a new witness, after the defendant had given his evidence; especially as

it was all done by way of reply to the evidence which had been given by the defendant.

What the defendant had said to Furman, or any one else, about the bonds and mortgages, before the transfer to Rice and Ladue, was clearly good evidence against himself. And it was also proper to show what Furman had said on the same subject in the defendant's presence. The object of the district attorney probably was, to show that the defendant had learned from Furman, if he did not know it before, that the securities were not good ones. Such evidence would have been quite pertinent. But the district attorney failed of his object; for the answer of Furman was favorable to the defendant. And this furnishes a further reason why the exception should not prevail.

The indictment does not state all that the defendant obtained by his false pretences. It states truly, that he got the deeds for the Potter farm and the Michigan lands: but it does not add, that he also got the note of Rice and Ladue for one hundred dollars; besides reserving five hundred dollars out of the payments which might be received on the mortgages. I do not see that this can properly be called a variance. It is enough that the defendant obtained some valuable thing by the fraud, which thing is properly described in the indictment. Proof that he obtained something more, does not make a variance.

The charge was substantially correct: and we see no sufficient ground for granting a new trial.

New trial denied.