40    47
68   297

## PAGE *v.* PARKER.

Upon questions of skill or science, men who have made the subject matter of inquiry the object of their particular attention or study, may give their opinions in evidence; it being first shown that they are skilful or scientific, or at least that they have superior actual skill or scientific knowledge. Mere opportunity for observation is not sufficient.

Hearsay evidence is incompetent to establish any specific fact, which is in its nature susceptible of being proved by witnesses who can speak from their own knowledge.

Where several persons are proved to have combined together for the same illegal and fraudulent purpose, any act done by one of the party, in pursuance of the original concerted plan, and with reference to the common object, is, in contemplation of law, the act of all; and any writings or verbal expressions, being acts in themselves, or accompanying and explaining other acts, in furtherance of the common design, and so part of the *res gestæ*, which are brought home to one conspirator, are

---

Page *v.* Parker.

---

evidence against the others, if it sufficiently appear that they were made and used in furtherance of the common purposes of the conspiracy; but it is essential that the joint conspiracy and common design be proved.

A question is leading which instructs the witness how to answer on material points, or puts into his mouth words to be echoed back, or plainly suggests the answer which the party desires to obtain from him, whether it be put in the alternative form or not.

The admission of evidence wholly immaterial furnishes no cause for setting aside a verdict.

Case for deceit in the nature of a conspiracy, cannot be sustained against a principal and his agent jointly, for the unauthorized fraudulent acts and representations of the agent alone.

Such action can only be sustained where some affirmation or representation wilfully false, or some designed and positively fraudulent artifice, is directly proved or necessarily to be presumed from the circumstances attending the transaction itself, to have been made or perpetrated by the defendants jointly, by means whereof a damage resulted to the plaintiff.

A paper, prepared by one witness, after the date of the occurrences to which its contents relate, cannot be permitted to go to the jury with his testimony, as substantive evidence, for the purpose of confirming it and impeaching the testimony of another witness upon the same subject.

The proper measure of damages in an action for fraud and deceit in the sale of property, where the purchaser retains it, is the difference between the actual value thereof, and its value as it was represented to be at the time of the sale; the price paid being very strong, but not conclusive evidence of its value as represented.

CASE, in favor of David Page against David M. Parker, William M. Parker and Henry W. Reding, with three counts in the declaration.

1. " For that the defendants, on the 29th of December, 1856, at Haverhill, in said county, with intent to cheat and defraud the plaintiff, did then and there unlawfully conspire and agree among themselves to cheat and defraud him of his money, goods, chattels, property and notes; and in accordance with said fraudulent intention, and in pursuance of said conspiracy, did wrongfully, falsely and fraudulently cheat and defraud him of a large sum of

Page *v.* Parker.

money, to wit: the sum of ten thousand dollars; wherefore the plaintiff saith that he is injured and hath sustained damage to the amount of fifteen thousand dollars, and therefore brings his suit."

2. "Also, for that the defendants, on the 29th of December, 1856, at Haverhill, with intent to cheat and defraud the plaintiff, did unlawfully conspire and agree among themselves to cheat and defraud him of his money, goods, chattels, property and notes, by selling to him, for a price greatly exceeding its value, the following real and personal estate, and rights then and there claimed and owned by said David, to wit: two undivided third parts of all said David's right, title, interest and estate conveyed to him by [certain specified deeds], being [certain real estate particularly described]; and two undivided third parts of certain personal property, consisting of the tools and implements owned by said David, and used by him in quarrying and transporting soap-stone from the quarry of soap-stone on said premises; and the plaintiff avers that in accordance with said fraudulent intent, and in pursuance of said conspiracy, the defendants did then and there falsely and fraudulently represent to the plaintiff that the soap-stone in said quarry was the best then known in the market; suitable for factory rollers, for stoves, and for any and all purposes for which soap-stone is used; that the said soap-stone could be quarried in blocks of almost any size, of the same uniformly sound and good quality; that most of the stone taken from said quarry was good stone, and worth $24 per ton in Boston in the rough block, and the poorest or refuse, $18 per ton; that large quantities of said stone could be sold in Boston in the rough block annually, at said prices, or at $20 per ton for the stone as it would average; that two firms in Boston would purchase annually 1600 tons of said stone at those prices; that it was costing to quarry and send said stone to Boston from $8 to $10 per ton, and no more; that the

freight was but $2.50 per ton, reckoning twelve cubic feet for a ton; that from the opening of the quarry all the stone taken from it, just as it came from the quarry in the rough, had been sold for $20 per ton, and that there was a net profit of $10 per ton on all taken from the quarry and sent to the market, and that large sums of money could be made by the plaintiff by purchasing said property, and that the said Reding was desirous of becoming a joint purchaser of said property with the plaintiff. And the plaintiff avers, that in accordance with said fraudulent intent, and in further pursuance of said conspiracy, the defendants, by means of said false and fraudulent representations and pretences, and by other false and fraudulent means, did then and there effect a sale of said two undivided third parts of said real and personal property, from said David to the plaintiff, at a price greatly exceeding its value, to wit: the sum of ten thousand dollars, and did then and there, in pursuance of and according to said fraudulent intent and conspiracy, and by force of said false and fraudulent representations and pretences, and by virtue of a sale and transfer of said property, then and there made from said David to the plaintiff, he, the said plaintiff, not then knowing of said conspiracy and fraudulent intent, nor that said representations and pretences, so made to the plaintiff, were false and fraudulent, but believing the same to be true, and being deceived thereby, unlawfully, knowingly, falsely and fraudulently, by means thereof, as aforesaid, obtain from the plaintiff the sum of six thousand dollars in money, and the promissory notes of the plaintiff, for the sum of $4000, all of the value of ten thousand dollars, of the goods and property of the plaintiff, whereas, in truth and in fact, the stone in said quarry was not then and there best known in the market, was not, &c., [negativing specifically the other alleged representations] and said real and personal estate

Page v. Parker.

were of little or no value, and ever since so remained, of all which the defendants were well knowing."

3. " Also, for that the plaintiff, on the 29th of December, 1856, bargained with the said William M., as agent of the said David M., to buy of said David M. certain real and personal estate, to wit: the real and personal estate particularly set forth in the second count, for the sum of ten thousand dollars; and the defendants, by falsely and fraudulently representing to the plaintiff that the same was of great value, then and there effected a sale of the same from said David to the plaintiff, for the price aforesaid; whereas the said estate was then and there of little or no value, and has ever since been of little or no value, all of which the defendants then and there well knew; whereby the plaintiff was deceived and defrauded, and hath sustained damage to the amount of fifteen thousand dollars, and therefore brings his suit."

Plea, the general issue.

The plaintiff having introduced evidence tending to show that a purchase and sale of the said two thirds of the soap-stone quarry and personal chattels were made upon representations, as alleged in the writ, introduced as a witness Stephen Walker, who testified that he had been engaged more or less for forty years in quarrying soap-stone, principally from the quarries in Grafton, Vt.; one year from the quarry in Weathersfield, Vt.; the work of quarrying, however, being carried on during this time only in the autumn and winter, as he was employed from the opening of spring until after the haying season, in work upon a large farm which he carried on; that he had visited the soap-stone quarries at Francestown and Orford, in this State, at Dana, in Massachusetts, and at Newfane, in Vermont; that he had manufactured soap-stone into pipe for aqueducts more or less for twenty years, and that he had worked for a year and a half in manufacturing articles from soap-stone for the New-York market. He then tes-

tified that he visited the quarry in question in 1856, soon after it was opened, for the purpose of making examination of the quality and characteristics of the stone, having seen specimens of it which were of such superior quality that if the quarry upon an average furnished such stone it would drive all other soap-stone out of the market. The witness was then asked what opinion he formed as to the quality of the stone in the quarry, and he answered that he came to the conclusion that it was so nearly worthless that it could not sustain itself in the market; to which the defendants objected, but the testimony was admitted.

The plaintiff introduced the deposition of Orin Bronson, who was asked, on cross-examination by the defendants, whether certain soap-stone which he carried away from the quarry was or not refuse stone, which had been thrown aside as unfit for the market; to which he replied that Taylor (referring to the person who, as foreman of the quarry, had charge of the work of quarrying the stone), said they were of as good quality as the larger stone, but were so broken up they would not pay as well to carry to market; that he (the deponent), was not a judge of the stone, but he supposed they were not refuse. No objection was taken at the time of the caption to the form of the answer, but on the trial the defendants objected that it was not responsive to the question, and therefore inadmissible, and that it was incompetent in its character; but it was admitted by the court.

The deposition of N. B. Felton was introduced by the plaintiff, in which he testified that he made out the deed, notes and mortgage, particularly describing them, which were executed by the parties at the time of the sale of the quarry. All the papers referred to in the deposition had been read to the jury as evidence by the plaintiff, before the deposition was introduced, and it was admitted that the papers so read to the jury were those referred to in the deposition. The defendants objected to the statements

Page *v.* Parker.

contained in the deposition of the contents of the said papers, they not being annexed to the deposition, but the objection was overruled by the court.

Said Felton further testified, on the direct examination by the plaintiff, to a statement made by the defendant, David, at the time he purchased the quarry, a year or two before the sale to the plaintiff, to the effect that the Francestown quarry would not come in competition with this, as the owner of that would not permit it to be wrought, for the reason that it was near his house, and he did not wish to be disturbed by the working of it, as he had become rich enough out of it. There was no evidence in any way connecting this defendant, David, with the alleged fraudulent representations set out in the declaration, or relied on to support the action, except that he, being the brother of the defendant, William, and the owner of the quarry, authorized him to negotiate a sale of it to any person, and on any terms that might be satisfactory to him, William ; and there was evidence tending to show that William made the representations alleged, during the negotiation which resulted in the sale to the plaintiff, the negotiation being carried on by said William, with the aid of Reding, the other defendant, who was employed by him to assist in effecting a sale.

The defendants objected to this declaration of David, as inadmissible, on the ground that, there being no evidence of his having personally made any representations pending the negotiation for the sale, his previous declarations were not admissible, but the court overruled the objection.

In the deposition of Arioch Wentworth, introduced by the plaintiff, is the following question and answer on direct examination by the plaintiff, to wit : " State whether or not any of this stone was so hard that it could not be sawed with the common saw used in sawing soap-stone."

*Ans.* "I should think some of it was so hard it would be rather difficult." The defendants objected to the ques-

tion, as leading, at the caption of the deposition and also on the trial, but it was admitted.

Wentworth testified in his deposition that he was a soap-stone and marble-worker in Boston, and had been employed in working soap-stone twenty-three or twenty-four years, and marble twelve years; that he had worked soap-stone from this quarry, and had seen it worked at the shop of the firm of Wentworth & Chandler, in Boston, and at other shops; that he had worked up, say twenty tons of this stone in his own shop, and had sawed fifteen or twenty tons for Wentworth & Chandler; that he had manufactured the stone into sinks, tubs, fire-places, boiler-tops and linings for grates and stoves, and had sold more or less of it in slabs after sawing; and that he had visited the Francestown quarry, and used stone from that ever since he had been in the business, until within three or four years past, but that he had never visited this quarry. After said deposition was read, the defendants introduced said Wentworth as a witness, and he testified that he had worked more or less of the stone from the Francestown, Orford and Haverhill quarries, in this State; the Grafton, in Vermont; the Groton, in Massachusetts; the Baltimore, in Maryland, several of which he had visited; and some from other quarries, the locality of which he did not know. He then testified that some of the stone which he had worked from this quarry was of a superior quality, and some very poor; that the quality of stone from all quarries improves as they are worked below the action of frosts, rains and the air; and that the stone from this quarry was of a better quality than that from other quarries at the same stage of development. The defendants then proposed to ask the witness what his opinion was of the quality of the stone in this quarry, and of its value for the various uses to which soap-stone is applied, below the point to which the quarry had been worked. The plaintiff objected, and the objection was sustained.

There was evidence tending to show that the firm of Wentworth & Chandler was one of the two firms in Boston that, as alleged in the second count, the defendants represented would purchase sixteen hundred tons of the stone per year, at the prices specified. The plaintiff introduced the deposition of William H. Wentworth, a member of said firm, in which he testified to a correspondence between said firm and the plaintiff, subsequent to the sale to him, relative to their taking the stone; and several of their letters to the plaintiff were annexed to the deposition, and read to the jury, one of which contained the statement that they did not wish any more stone forwarded, as they did not think the plaintiff had any which would answer their purpose. On cross-examination by the defendants, he testified that the letter containing this statement was written in reply to one from the plaintiff which he considered uncivil in its terms, and that it might, therefore, have been written with a view to break off further business intercourse on the part of the firm with him. The plaintiff then introduced the letter from himself to the firm, to which this was stated to be in reply; and having identified it by said Wentworth's testimony, caused it to be annexed to his deposition, and read it to the jury. The defendants objected to this letter of the plaintiff, but it was admitted.

The plaintiff and Reding, one of the defendants, both testified to representations made to the plaintiff by Reding and William M. Parker during the negotiation for the sale. The plaintiff, after Reding had testified, produced a paper which he testified he had exhibited to Reding, and requested him to sign it, purporting to be a statement of the representations so made, and he further testified that Reding admitted it to be substantially correct, except in two particulars, which he specified. Reding denied upon the stand that the paper was the same as that exhibited to him, or if it was, he claimed that it had been altered, and

he testified that he refused to sign the paper exhibited to him, because the statements contained in it were not true. The question was submitted to the jury whether this was the paper exhibited to Reding, and what his statements were in relation to signing it. The statements contained in the paper produced did not correspond with the representations, as testified to by him. The defendants objected to the admission of the paper, but it was admitted for the purpose of being considered in connection with Reding's testimony, and of impeaching it.

The defendants moved for a nonsuit as to David M. Parker, on the ground that there was no evidence of any representations made by him personally, or in any way connecting him with the sale, or the negotiations which led to it, except as above stated. The court ruled that he might be held answerable in this action for any false and fraudulent representations alleged made by his agent, William M., although he had no personal knowledge of them prior to the delivery of the deed to the plaintiff.

By the terms of the agreement made between William M., acting in behalf of David, and the plaintiff, upon the sale, the plaintiff was to pay $100 cash, and to give his promissory notes for the balance of the consideration, three of which, one for $900, one for $1000, and one for $4000, were to be made payable at different times between the time of the contract, which was the 29th of September, 1856, and the 1st day of January, 1857, and others, payable at times subsequent to said 1st of January, the said others being secured by a mortgage back of the premises conveyed, and the deed, notes and mortgage were to be lodged in the hands of a third person, under an agreement that if the plaintiff paid the three first mentioned notes as they fell due, the deed was to be delivered to the plaintiff when the last of the three was paid, and the remaining unpaid notes and mortgage to the defendant, David M. Parker, the said defendant having the right to

Page v. Parker.

take from the person with whom they were deposited, each of the three notes as it fell due, if it remained unpaid by the plaintiff, in order that payment of it might be enforced, if David so chose. The $100 was paid by the plaintiff in cash, and the deed, notes and mortgage executed on the 1st of October, 1856, and deposited in the hands of said third person, according to the agreement. In the said month of October or November following, and before the plaintiff paid the last of said three notes, to wit: that for the $4000, the evidence tended to show that the defendants received information from persons engaged in the manufacture of stoves from this stone, and upon whose judgment and statements in relation to the qualities and value of the stone they had mainly depended, that it was found to be very liable to crack on being exposed to heat, contrary to the opinion before entertained and expressed by said persons; and it was made a question to the jury whether the fact that it was discovered to be defective in this respect was communicated to the plaintiff by the defendants before the time limited for the payment of the last of said three notes and the delivery of the deed.

The court instructed the jury that if the representation was made to the plaintiff during the negotiation for the sale in September, that the stone was suitable for stoves, the representation being in all other respects such as to entitle the plaintiff to recover on account of it, except that the defendants honestly supposed it to be true, and if afterward, and before the payments were all made which would entitle the plaintiff to the delivery of the deed, it came to the knowledge of the defendants that the stone was unsuitable for stoves, by reason of its liability to crack when exposed to heat, the defendants were bound to communicate that fact to the plaintiff; and if, having opportunity to communicate the knowledge of it to him, they designedly withheld it until after the time limited

for the payment of said three notes, and the delivery of the deed, this would be sufficient to warrant them in finding the representation fraudulent, and to justify a verdict on that point for the plaintiff, although they might have supposed it to be true when made.

The court also instructed the jury that the measure of damages to be assessed against the defendants, in case they found a verdict for the plaintiff, was the difference in the value of the property, as it actually was, and its value as it would have been if it were such as it was represented to be in those particulars in relation to which the false and fraudulent representations were made on which the verdict was founded.

There was no evidence of any expense incurred, or loss or actual damage sustained by the plaintiff, by reason or on account of said sale or of the property conveyed, except the payments made on or before the first of January, 1856, to the amount of six thousand dollars, the giving of notes to the amount of four thousand dollars more, the payment of two thirds of about $111, amount of the expenses of working the quarry for a month and a half after the plaintiff took possession of it under his deed, and a journey from Haverhill to Boston, to make arrangements for the sale of the stone.

The jury returned a general verdict for the plaintiff for nine thousand dollars damages, which the defendants moved to set aside for error in the rulings and instructions aforesaid, and because the damages assessed by the jury were excessive. The defendants also moved in arrest of judgment, because the first and third counts in the declaration set forth no cause of action.

*Felton,* and *H. & G. A. Bingham,* for the defendants.

*C. W. & E. D. Rand, H. Hibbard,* and *Page,* for the plaintiff.

FOWLER, J. A variety of questions are raised by the case, and have been discussed by counsel, to only a portion of which have we found it necessary to direct our attention in arriving at a conclusion.

I. As a general rule, the opinion of witnesses is not admissible in evidence. They must speak to facts within their knowledge. But, upon questions of skill or science, with which a jury may not be supposed to be familiar, men who have made the subject matter of inquiry the object of their particular attention or study, are competent to give their opinion. It must, however, be first shown that they are skilful or scientific men, or at least that they have superior actual skill or scientific knowledge in relation to the question, before their opinions can be competent. Mere opportunity for observation is not sufficient. 1 Phill. Ev. (Edwards' Ed.) 778, ch. 10, sec. 4, and notes; *Rochester* v. *Chester*, 3 N. H. 349; *Robertson* v. *Stark*, 15 N. H. 109; *Beard* v. *Kirk*, 11 N. H. 397; *Concord Railroad* v. *Greely*, 23 N. H. 237; *Pickard* v. *Bailey*, 26 N. H. 152; *Marshall* v. *Columbian Ins. Co.*, 27 N. H. 157; *Lincoln* v. *Barre*, 5 Cush. 590; *Lusk* v. *McDaniel*, 13 Ire. 485; *McLean* v. *State*, 16 Ala. 672; *Luning* v. *State*, 1 Chandler (Wis.) 178.

In the present case, Stephen Walker was permitted to give his opinion as to the quality of the soap-stone in the quarry in controversy. This was peculiarly a question of scientific skill and knowledge, which the witness was not shown to possess. It only appeared that he had been more or less engaged for forty years in quarrying soapstone, principally from two localities in Vermont; that he had manufactured soap-stone into pipe for aqueducts, more or less for about twenty years; that he had worked a year and a half in manufacturing articles from soapstone for the New-York market, and that he had visited two soap-stone quarries in New-Hampshire, one in Massachusetts, and another in Vermont, besides that concern-

GRAFTON.

ing the quality of whose product he testified. But it did not appear that he had ever devoted any time or study to an investigation of the composition and characteristics of soap-stone, or made any particular observations on that subject, so as to be better qualified to give an opinion on the scientific question propounded to him, than any member of the jury. For aught that is shown in the case, he might have been a mere day laborer, mechanically performing the task assigned him; scarcely more intelligent than the material on which he wrought, and hardly better qualified to give an opinion of the qualities of that material than the tools he employed in working it. He was not, therefore, shown to possess that scientific or actual knowledge of the subject in relation to which he was inquired of, which made his opinions competent evidence; and they were improperly admitted. He was certainly not shown to possess so many qualifications as an expert, as Arioch Wentworth, whose opinions, when offered by the defendants, were, as we think, under the circumstances, properly rejected.

II. The statement in the deposition of Orin Bronson of what Taylor said in relation to the stone Bronson carried away from the quarry, was mere hearsay, and inadmissible against the defendants' objection on trial—this portion of the deponent's answer not having been responsive to the interrogatory proposed to him.

If a deposition contain mere hearsay of a fact upon which hearsay is not evidence, it cannot be received as proof of that fact; and hearsay is uniformly holden incompetent to establish any specific fact which is in its nature susceptible of being proved by witnesses who can speak from their own knowledge. 2 Phill. Ev. (Edwards' Ed.) 251, ch. 1, sec. 7 ; *Pellatt* v. *Ferrars*, 2 B. & P. 548; 1 Gr. Ev., sec. 99.

It is contended that the declarations of Taylor were competent as admissions of the defendants, or some of

Page *v.* Parker.

them, whose agent he was in the matter as to which they were made. But the case does not find Taylor to have been the defendants' agent in relation to the stone which the witness carried away. He was the foreman of the hands employed by the defendants in quarrying stone, and had charge of that department; but it does not appear that he had any authority or agency whatever connected with the sale or delivery of stone from the quarry, or that he was ever employed or authorized to make any representations of the character or value of the stone quarried. His declarations on that subject, therefore, were mere hearsay; he was a competent witness, and might have been called by either party; and the witness having introduced this clearly incompetent matter into his answer when the same was not called for by the interrogatory, the defendants had a right to take and insist upon the substantial objection to its being read in evidence on trial, although they had omitted to make any objection to it at the caption.

III. The statement of David M. Parker, made a year or two before the alleged conspiracy to defraud the plaintiff was charged to have been entered into, to the effect that the Francestown quarry would not come into competition with the one as to the sale of which the conspiracy was alleged to have been afterward formed, was clearly inadmissible. The case finds there was no evidence whatever that went to connect David M. Parker in any way with the alleged fraudulent representations set forth in the declaration, and relied upon to support the action, except that, being a brother of one of the other defendants, and owning the quarry, he authorized that brother to negotiate a sale of it to any person, upon such terms as might be satisfactory to him; while the evidence tended to show that the brother made the alleged fraudulent representations, during the negotiation carried on by himself and the third defendant, whom he employed to assist him in

effecting the trade which resulted in a sale of the property to the plaintiff.

Now, it is a well established rule, that where several persons are proved to have combined together for the same illegal and fraudulent purpose, any act done by one of the party, in pursuance of the original concerted plan, and with reference to the common object, is, in contemplation of law, the act of the whole party, and it follows, as a corollary from this rule, that any writings or verbal expressions, being acts in themselves, or accompanying and explaining other acts, in furtherance of the common design, and so part of the *res gestæ*, which are brought home to one conspirator, are evidence against the other conspirators, provided it sufficiently appear that they were made and used in furtherance of the common purposes of the conspiracy. But the conspiracy and common design must be shown, else the statements or declarations made by one of them in the absence of the others, but for the furtherance of that common design, cannot be given in evidence against the others. Proof of the plot or combination must precede, accompany or follow proof of declarations made by either of the alleged conspirators, to render them competent against the others; it must be shown that the conspiracy or combination was entered into before the declarations were made, though the conduct, acts and declarations of the separate individuals in the planning or execution of the joint scheme may be shown as evidence of the common design. To be admissible, the acts and declarations must be those only which were done and made during the pendency of the wrongful enterprise, shown to have been undertaken jointly, and in furtherance of its objects. 1 Gr. Ev. 80, sec. 111, and notes; 1 Phillipps' Ev. (Edwards' Ed.), ch. 8, sec. 1, and notes; *The People* v. *Parish*, 4 Den. 153; *Williamson* v. *Com.*, 4 Gratt. 547; *State* v. *Simons*, 4 Strobh. 266; *Regina* v. *Mears*, 1 E. L. & E. 581; *State* v. *Ripley*, 31 Me. 386; *Glory* v. *State*,

8 Eng. (Ark.) 236; *Apthorpe* v. *Comstock*, 2 Paige 482, 488; *Craige* v. *Sprague*, 12 Wend. 41; *Babb* v. *Cleason*, and *Willes* v. *Farley*, 3 C. & P. 395; *Patten* v. *Gurney*, 17 Mass. 182; *Lovell* v. *Briggs*, 2 N. H. 218; *Sheple* v. *Page*, 12 Vt. 519; *Talbot* v. *Caines*, 5 Met. 520; *Brannock* v. *Bouldin*, 4 Ire. 61.

In the present case, the statement of David M. Parker was made at the time he purchased the quarry, a year or two before the sale to the plaintiff, and accompanied his act of purchase. There could, therefore, as we conceive, be no pretence that this declaration was made during the pendency of the combination or conspiracy to defraud the plaintiff in the sale of that quarry, if any existed, or that it accompanied and explained any act done in furtherance of the common design of such conspiracy, if one afterward existed, and quite as little that it was a declaration accompanying and explaining any act done by David M. Parker himself, in plotting or arranging such contemplated conspiracy or combination. It was, therefore, clearly incompetent and inadmissible.

IV. The question proposed by the plaintiff to Arioch Wentworth in his deposition was manifestly leading. It suggested a material fact in such a way as to indicate very decisively to the witness that he was expected to verify its truth by his answer, and might have been answered by a simple affirmative or negative. It was an argumentative or pregnant interrogatory, assuming the existence of a particular condition of the soap-stone, which had not been proved, but which the witness was evidently expected to establish. 1 Gr. Ev., sec. 434; *Bartlett* v. *Hoyt*, 33 N. H. 165; *Dudley* v. *Elkins*, 39 N. H. 78; *Spear* v. *Richardson*, 37 N. H. 23.

A question is leading which instructs the witness how to answer on material points, or puts into his mouth words to be echoed back, as was here done, or plainly suggests the answer which the party wishes to get from him, whether

it be put in the alternative form or not. 2 Phill. Ev. (Edwards' Ed.), ch. 10, sec. 1, and notes ; *People* v. *Mather*, 4 Wend. 229 ; 1 Stark. Ev., 123 ; *Courteen* v. *Touse*, 1 Camp. 43 ; *Snyder* v. *Snyder*, 6 Binn. 483.

V. It was wholly immaterial to the issue between the parties, whether or not the letter of Wentworth & Chandler to the plaintiff, declining to take of him more stone because he had none which would answer their purpose, was written in reply to one from him couched in civil or uncivil terms, and therefore it would not have been competent for the plaintiff to have contradicted even the defendants' witness upon that point by introducing the letter or otherwise. The only fact that could have been important or material was, that they declined to purchase more stone, because they were of opinion that he had none of sufficiently good quality to answer the purpose for which they wished to employ them. Whether or not the letter announcing this conclusion was in reply to one from the plaintiff, which they justly or unjustly regarded as uncivil, and for that reason was designed to discontinue further business intercourse on their part with him, was of no consequence to the issue between the parties to this suit. The letter was then offered and received to contradict the cross-examination of the plaintiff's own witness in regard to an immaterial matter, and was itself wholly immaterial, so far as any thing appears from the case. It was, therefore, improperly admitted ; but as it seems to have been entirely immaterial, and we are unable to perceive how the defendants could have been prejudiced by its introduction, its improper admission furnishes no sufficient ground for setting aside the verdict. *Clement* v. *Brooks*, 13 N. H. 92 ; *Winkley* v. *Foye*, 28 N. H. 519 ; 33 N. H. 171.

VI. The present action was clearly brought against the defendants for a joint conspiracy or combination by them to cheat and defraud the plaintiff in the sale to him of the soap-stone quarry, and its appurtenances. As we have

before seen, if the plaintiff proved that the defendants had first entered into a combination for this wrongful and fraudulent purpose, the subsequent acts and representations of each of the conspirators, in furtherance of that purpose, would be the acts and representations of them all, and competent evidence against them all on trial. But proof of the conspiracy, or wrongful combination, having been first entered into, must precede, or certainly accompany or follow that of the acts and representations, otherwise the acts and representations of one could not be competent evidence of the guilt of the others. Only those acts and declarations of one conspirator are admissible to charge another, which form part of the *res gestæ* of the offence; that is, which were made or done during the pendency of the wrongful or criminal enterprise shown to have existed, and in furtherance of its objects. The acts and declarations of a conspirator, accompanied by sufficient proof of the fact of a conspiracy having been entered into, may be given in evidence to charge his fellow, but subject always to this limitation, that the acts and declarations admitted should be those only which were made and done during the pendency of the wrongful or criminal enterprise, and in furtherance of the common design. They must be concomitant with the principal act, and so connected with it as to form part of the *res gestæ*. *Browning* v. *State*, 30 Miss. (1 George) 656; *Patton* v. *Ohio*, 6 Ohio N. S. 467.

Now, if we understand the ground of the motion for a nonsuit as to David M. Parker, it was, substantially, that no evidence had been offered tending to show that he had ever conspired or combined with the other defendants to cheat and defraud the plaintiff; that he made no representations personally, and it only appeared that he was the brother of one of the other defendants, and being the owner of the property, had authorized his brother to dispose of it to such person and on such terms as he pleased. In

this state of things the court seems to have ruled that notwithstanding the want of any evidence tending to show that David M. Parker entered into or in any way participated in any combination or conspiracy with the other defendants, for the alleged illegal and fraudulent purpose charged against all of them ; and although he never authorized or was guilty of any fraudulent acts or representations, he might be held answerable jointly with them in this action, by reason of the alleged false and fraudulent representations made by his brother and Reding, notwithstanding he had no knowledge of them prior to the delivery of the deed to the plaintiff.

Thus understood, we think the ruling of the court to have been erroneous. If no conspiracy and common design to cheat and defraud the plaintiff were shown to have existed between David M. Parker, his brother, and Reding, but William M. was merely the agent of David M. to dispose of his property, and employed Reding to assist him in so doing, as the facts stated in the case would seem to indicate to have been the true character of the transaction, David M. could not be holden responsible as a joint conspirator with his brother and Reding, solely by reason of unauthorized, false and fraudulent acts and representations made by them ;—their false and fraudulent representations, if made without his knowledge and authority, or privity, and without a common design and combination between him and them to defraud and cheat, could not be received as evidence of his guilt as a joint conspirator and defrauder with them, however he might be holden separately responsible as principal, for the wilfully false and fraudulent unauthorized acts and representations of his agent.

The gist of an action on the case in the nature of a conspiracy, is not the unlawful or wrongful agreement and combination of the defendants, but their joint fraudulent acts, and the consequent damage resulting from the execu-

tion of this agreement. Both the joint fraudulent acts and the consequent damage must be proved, to entitle the plaintiff to recover. The conspiracy charged is important only as giving character to the individual acts of the parties to it. It must be shown that all combined or conspired, before the acts or declarations of one can be competent evidence against all. It is not necessary to prove that all came together, and actually agreed in terms to have a common design, and pursue it by common means. If it be proved that the defendants pursued by their acts the same common object, often by the same means, one performing one part and another another part of the same plan, so as to complete it with a view to the attainment of the same common result, the jury will be justified in the conclusion that they were engaged in a combination or conspiracy to effect that result. But, in the absence of any proof of a conspiracy formed or a combination entered into, and of any acts or declarations of one of the alleged conspirators, made and done while the alleged conspiracy was pending, in furtherance of the alleged common design, it is quite clear that he cannot be found guilty solely upon the acts and declarations of other alleged conspirators. As we have before seen, those acts and declarations are admissible against him solely on the ground that, by combining or conspiring together, the conspirators have jointly assumed to themselves as a body the attribute of individuality, so far as regards the prosecution of the common design; thus rendering what is knowingly and wilfully done and said by any one of their number in furtherance of that design a part of the *res gestæ*, and therefore the act and saying of all. 1 Gr. Ev., secs. 92, 93, 94, and notes; *Regina* v. *Murphy*, 8 C. & P. 297; *Regina* v. *Shellard*, 9 C. & P. 277.

The ruling of the court below having apparently gone upon the assumption that David M. Parker might be holden liable as a joint conspirator with his brother and

Reding, solely by reason of their alleged false and fraudulent conduct and representations, although he had neither conspired or combined with them to defraud the plaintiff, nor had in any way participated in or had any knowledge of, or given any authority for their alleged false and fraudulent conduct, representations and purpose, was therefore erroneous. The master and his servant, or the principal and his agent, cannot be holden jointly liable in an action of tort for the unauthorized fraudulent acts or representations of the servant or agent, committed or made without the knowledge and concurrence of the master or principal. *Parsons* v. *Winchell*, 5 Cush. 592 ; *Wright* v. *Wilcox*, 19 Wend. 343 ; 1 Pick. 62.

In an action *ex delicto*, the act complained of must be the joint act of all the defendants, either in fact, or in legal intendment and effect. But the act of a servant or agent is not the act of the master, or principal, even in legal intendment or effect, unless the master or principal previously directs or subsequently adopts and ratifies it. *Parsons* v. *Winchell*, 5 Cush. 593.

There is no contribution among joint wrong doers, and if David M. Parker could be found guilty as a joint conspirator and defrauder with the other defendants, solely upon evidence of the unauthorized fraudulent acts and representations of his agent and the person employed by him to aid in effecting a sale, and he should be compelled to satisfy the judgment recovered against all, he would be entirely without remedy for reimbursement, or even contribution against the other defendants, however utterly unauthorized and disapproved those fraudulent acts and representations might have been. Unless, therefore, the plaintiff be able to show the joint participation of David M. Parker in the alleged fraudulent purpose and design of the other defendants, it would be manifestly unjust that he should be holden liable with them in the present action, even though he might be clearly liable, if sued

separately, for the damage resulting from the unauthorized fraud of the agent employed by him to sell his property; since it is well settled that a principal has a remedy over for damages he may be compelled to pay in consequence of the unauthorized misfeasances and malfeasances of his agent. *Merryweather* v. *Nixan*, 8 D. & E. 186 ; *Vose* v. *Grant*, 15 Mass. 505, 521 ; *Campbell* v. *Phelps*, 1 Pick. 62.

VII. An action for deceit and fraud in the sale of property, or an action for conspiracy to defraud in the sale of property, can only be sustained where some affirmation or representation, wilfully false, or some designed and positively fraudulent artifice is directly proved, or is necessarily to be presumed from the circumstances attending the transaction itself, by means whereof a damage resulted to the plaintiff. Com. Dig., Case for.Deceit, A. (8), and authorities; *Emerson* v. *Brigham*, 10 Mass. 197 ; *Van Bracklin* v. *Fonda*, 12 Johns. 468 ; *Sheple* v. *Page*, 12 Vt. 519.

Upon the execution and delivery of the deed by David M. Parker to a third person, for the plaintiff, the payment of $100 and the making of notes by the plaintiff for the balance of the purchase money, $4000 of which was secured by a mortgage of the premises conveyed, and the deposit of those notes with that third person, under the agreement set forth in the case, the trade between the parties was finished and the sale complete, so far as the plaintiff was concerned; and, in the absence of fraud, there being no pretence of any express warranty, the property purchased was afterward at the risk of the plaintiff. No subsequent occurrence could transform what was then a fair and honest transaction into a false and fraudulent one. The deed of David M. Parker gave to the plaintiff all he had purchased, and if it were afterward discovered by him to be less valuable, by reason of latent defects in the quality of the stone, than he had supposed, or the defendants had honestly represented, in the absence of fraud the plaintiff was obliged to suffer the loss without redress.

He could not on that account rescind the contract. He could not resist the payment of the notes, because the soap-stone proved less valuable for certain purposes than had been honestly anticipated by both parties. If the plaintiff had been notified by the defendants of the information they had received in relation to the newly discovered incapability of the stone to endure the action of fire, it would neither have furnished any ground for rescinding the contract, nor any cause of defence to an action upon the notes, since it could at most only have tended to show a partial failure of consideration, contingent and uncertain in its extent. 2 Kent. Com. 478, 479, and authorities; Co. Litt. 12 (a); 2 Black. Com. 452; Bac. Abr., Action on the Case, E.; 2 Com. on Cont. 263.

It could not, therefore, be any evidence of actual fraud in the defendants, resulting in damage to the plaintiff, not to communicate to the plaintiff information which could do him no good, and furnish him no relief in relation to the contract he had made and finished; much less could their neglect to communicate such information operate back, and not only make the previous representations, made in good faith, and with an honest belief in their truth, wilfully false and fraudulent, but justify the jury in finding an original conspiracy and combination to defraud between all the defendants, of which no evidence had previously been offered, and such a joint participation of all the defendants, in carrying out the common design and purpose of such conspiracy and combination, as to make the acts of one evidence of the guilt of the others. In order to sustain the present action, the plaintiff must prove a positive fraud to have been committed by the defendants jointly, or by such of them as are holden responsible, and a damage resulting to himself therefrom. He must show not only that the representations made to him were false, and known at the time to be so, but that they were intended to deceive him, and that he believed

and acted upon them as true. It is not sufficient to prove that they were unwarranted and groundless; it must be shown that those who made them did not believe them to be true. Besides, the representations must have been such as were likely to impose upon a man of ordinary prudence and caution, and to throw him off his guard on a point or points where he might properly and judiciously be expected to rely upon them, and not upon his own sagacity and means of observation or investigation. *Ide* v. *Gray*, 11 Vt. 615; *Sheple* v. *Page*, 12 Vt. 519; *Tryon* v. *Whitmarsh*, 1 Met. 1; *Marno* v. *Gardner*, 3 Brev. 31; *Emerson* v. *Brigham*, 10 Mass. 197; *Hoitt* v. *Holcomb*, 32 N. H. 185.

VIII. We are not aware of any principle upon which the paper prepared by the plaintiff and exhibited to Reding could properly have been permitted to go to the jury as substantive evidence. It was not made at the time of the representations by one who then knew it to be correct; it was not a part of the *res gestæ* in any sense of that term; it would seem to have been a document prepared by the plaintiff himself, from his recollection of the conversations with Reding; and there was a conflict of evidence as to whether or not the paper produced on trial was the original, or had been copied or altered from the original draft. At most, it was only a written document, prepared by one party as a witness, offered and permitted to go to the jury with his testimony as substantive evidence for the purpose of confirming it, and impeaching the testimony of an adverse party in conflict with it. It seems to us to have been improperly admitted for this purpose.

IX. The instructions of the court below, as to the rule of damages in case the jury found the sale to have been effected through the alleged conspiracy and combination of the defendants to cheat and defraud the plaintiff, appear to have been substantially correct. Indeed, it may be considered as well settled in this State, that the proper meas-

ure of damages, in actions for fraud and deceit in the sale of real as well as personal property, where the purchaser retains the property, under ordinary circumstances, is the difference between the actual value of the property, and its value as represented to be at the time of the sale, the price paid being very strong, but not absolutely conclusive evidence of the value of the property as it was represented to be. Aggravating circumstances of indignity and insult, of abusive language and conduct attending the transaction, if properly alleged, might undoubtedly be given in evidence, to show the whole extent and degree of the injury, and thereby increase the damages. *Fisk* v. *Hicks*, 31 N. H. 535, and authorities; *Cary* v. *Graman*, 4 Hill 625, and cases cited.

There are various questions as to the sufficiency of the several counts of the plaintiff's declaration, raised by the motion in arrest of judgment, which it is unnecessary now to consider, inasmuch as the verdict must be set aside for the improper admission of evidence and the several errors in the rulings of the court below, to which we have adverted; and the objections taken may be obviated on the new trial by an amendment, or perhaps by the plaintiff's taking his new verdict, if one shall be obtained, upon the count to which no serious objection has been urged.

*Exceptions sustained—new trial granted.*