## NOVEMBER SESSIONS.

### READING (PENN.), NOVEMBER, 1823.

The *Commonwealth*
vs.
*John K. Boyer, Jacob W. Seitzinger,* } Conspiracy.
*Jacob K. Boyer, Frederick Shebely,*
*and Henry Zeller.*

Present—The *Honorable Robert Porter, Esq.*

*Daniel J. Hiester, Frederick Smith, David Paul Brown,*
and *Alexander L. Hayes, Esquires,* Counsel for the
Prosecution.

*Marks Jno. Biddle, Charles Evans, James Buchanan,*
*Samuel Baird, James B. Hubley,* and *William Dar-*
*ling, Esquires,* Counsel for the Defendants.

This interesting case was called up on the 5th inst.,
when it appeared that all the defendants except Henry
Zeller had pleaded "not guilty;" and he being requested
to plead, this was objected to by Evans and Buchanan;
it appearing on the face of the record that he had been
examined before the grand jury, as a witness; and fur-
ther proof being offered, that he was inveigled to appear
in that character by the prosecution, who promised that
no indictment had been or should be preferred against
him.

In support of this objection, it was contended, that as
the constitution had expressly forbidden the use of force

in such cases, courts of justice should never allow the substitution of fraud to be effectual.

Brown, contra, et per Cur. " The Attorney General has required Henry Zeller to plead to the indictment; and it is not necessary for us to go into an examination of circumstances; for if fully made out, we should not consider the case strong enough to support the objection."

The defendant pleaded " not guilty "; and the counsel for defendant intimated their intention of severing in their challenges, which was overruled by the court without argument, a minute of such decision being entered on the record.

The material part of the indictment stated, " that (*the defendants above named*) at the county (*of Berks*) aforesaid, being evil disposed persons, and wickedly and unjustly devising and intending to defraud and prejudice certain persons hereinafter mentioned, on the first day of May, in the year of our Lord 1823, with force and arms, *at the county aforesaid*, did falsely, fraudently, and unlawfully conspire, combine, and confederate, and agree among themselves to *obtain, acquire, and get into their hands and possession*, of and from a certain firm of Hood, Irvine & Company, a certain firm of Hubbs and Evans, a certain firm of C. S. & T. W. Smith, a certain Richard S. Risley, a certain firm of Stevenson & Hart, and a certain William Rogers, Jr., divers large amounts of goods, wares, and merchandizes, and the jurors aforesaid, on their, &c., do present that the said, &c., in pursuance of, and according to, the said conspiracy, combination, confederacy and agreement among themselves, had as

*Margin notes:*

READING,
Nov. 1823.

The Com'th
v.
Boyer and
others.

Form of the
indictment.

aforesaid, *then and there* did falsely, fraudulently and unlawfully obtain, acquire and get possession of divers large amounts of goods, wares, and merchandizes, of and from the said, &c., to the great damage of the said, &c., to the evil example of all others, and against the peace and dignity of the commonwealth of Pennsylvania.

" And the jurors aforesaid, on their, &c., do further present, that the said, &c., being such persons as aforesaid, and wickedly and unjustly devising and intending to defraud certain merchants and traders of the city of Philadelphia, of large amounts of goods, wares, and merchandize, on the same day and year aforesaid, with force and arms, at the county aforesaid, did falsely, fraudulently and unlawfully conspire, combine, confederate and agree among themselves *to obtain, acquire and get into their possession,* of and from the said merchants and traders, divers large amounts of goods, wares, and merchandize, to the great damage of the said merchants and traders, and against the peace and dignity of the commonwealth of Pennsylvania.''

The case was clearly and handsomely opened to the jury by Hayes, for the prosecution; who stated that the conspiracy would be fully proved by a correspondence in writing between the parties, and by their own declarations and other parol testimony; and that it was carried into execution by Henry Zeller's being sent down to Philadelphia with letters of credit, enabling him to purchase goods to a large amount; which goods were afterwards carried away and concealed.

To substantiate this, several letters were offered in evi-

dence, from one or two of the defendants, relating chiefly to the purchase of merchandize, but without containing any direct proof of a conspiracy or other criminal matter. This course was objected to by Evans, who contended that before particular acts could be inquired into, a general conspiracy or combination must be proved,* and cited Phillips, 73 ; and Hubley, on the same side, argued that five persons might be guilty of as many conspiracies as the abstract numbers were capable of separate combinations, and therefore that the act of a solitary individual ought not to be brought forward to implicate four others, unless that act was first deduced as the act of all, &c. ; and cited 1 Chitty, 88, 3 S. & R. 16. Buchanan and Evans, to the same point, cited 3 Chitty, 570, 3 Serg't & R. 224, 3 Chit. 951 ; and also intimated their inten-

---

* This point has been decided in a case in the court of Sessions in New York, in November Term, 1823. James Stamford was indicted for an assault on Mary Robinson, with intent to commit a rape. Mary Robinson was offered as a witness to prove the felony, but was objected to on account of her infancy.

Maxwell, District Attorney, called witnesses to prove the injury upon the body of the infant. Blake, counsel for the prisoner, objected, and contended that the proper course was for the District Attorney to show that the *prisoner* had committed the injury, *before* he went on to show the particulars ; for possibly, after he had shown them, he would not be able to prove them upon the prisoner.

The Court observed, that it had been decided, that the District Attorney might begin at any part of the case : if he chose to introduce witnesses to prove the felony and the particulars of it, *before* he proved the *prisoner* committed it, it was legal and proper, and if he was unable to connect the prisoner with the crime, it would go for nothing.

tion of objecting to any evidence which should be offered to prove the defendants guilty of *a cheat or fraud*, as the indictment contained no such charge. Both points were argued by Brown and Hayes, and answered by Buchanan; et per Cur. :

"I think the letter ought to be read, as it may hereafter have a bearing upon the case; and as to the other point, it is unnecessary in this stage of the business to give any opinion."

Another question immediately arose, whether an enclosed order, referred to in a letter which had been read in evidence, could be shown to the jury, there being but slight proof of its identity. This was argued by Evans and Biddle, for defendants, and by Brown and Hayes, for plaintiff; et per Cur: "Let the paper be read to the jury."

Another letter was then offered and objected to; and Baird contended against its admission upon two grounds: 1st, that it did not go to prove the offence charged in the indictment; and secondly, that it went to implicate individuals who, although on the same indictment, were not parties to the admission, and cited 1 Phillips, 13; sed per Cur:

"This letter certainly may affect John K. Boyer, the writer: and if we allow it, we must give the whole, and not suppress any part of it." Here the court was informed that the counsel for defendants had not finished speaking; and Evans argued that a letter between two individuals merely ought not to be read in evidence against the rest; and also, that it was neither relevant nor applicable

to the charge—that it simply advised one of the parties to the indictment to avoid, by absconding, a warrant which had been issued against him, and that it contained no evidence of a conspiracy. Biddle also stated, that in this letter an individual had been named, against whom, although one of the defendants, not a title of proof had appeared; and contended that it should not be allowed in evidence, when the writer would not be permitted to give testimony, were he himself present: and that *that* which would not be admitted to prove a debt of five shillings, ought not to be read in evidence in an action so highly penal as the one then trying.

Buchanan, in conclusion, said, that after the opinion expressed by the court, nothing but the most imperative sense of duty would induce him to trespass; that the letter consisted of two parts; one of which concerned an offence not charged in the indictment, and that certainly on this point the letter was not relevant; and asked if the opinion expressed by the court, that it could not suppress a part of the letter, was law; and whether any evidence could be sent to a jury with instructions to pay no regard to it, and declared that he would consider some parts of the letter in no other point of view than as mere hearsay testimony—et per Cur. :

"Upon reflection, I rather think that part of the letter which relates to Seitzinger had better not be read at present."

A subsequent letter offered in evidence was objected to, and Biddle contended that it should not be allowed; that it was not addressed to any one interested in the

READING,
Nov. 1823.

The Com'th
v.
Boyer and
others.

present action, and that it was altogether irrelevant, and that if one individual could implicate another, by calling and requesting him to frame a letter on an entirely innocent subject, the most virtuous and honorable man in society would not be free from such accusations.

Brown and Hayes, contra, contended that the objection of the letter's being written to a person not party to the suit, was groundless, as it might fairly be read to show the intention of the writer.

In answer, it was urged that in every indictment the probata must agree with the allegata, otherwise the whole would be a nullity; that by a recurrence to the present case, the charge was for getting and obtaining goods, an act perfectly innocent in itself; and that to render criminal an act prima facie innocent, a sufficient ground of inducement should be shown; that the law was well settled, and that although a previous conspiracy might be shown by subsequent acts, yet that subsequent act must be a criminal one, or have some bearing upon the charge; sed per Cur. :-

"The charge of conspiracy must be established by proving certain acts which occurred previous, subsequent, or while it was carrying on. The witness has stated certain acts, one of which is the writing of this letter; it strikes me, therefore, it ought to go to the jury; if not relevant, the objection can be made to them."

A letter was then offered in evidence, which was objected to, as containing testimony of a secondary nature, and Hubley stated, that he felt confident the court would

be anxious to hear all proper evidence; but there was a line, beyond which he was sure it would not go; that the principal part of the letter offered related to a person who did not write it, did not see it, and perhaps knew nothing whatever of the thing; and that no particular facts, not in themselves illegal, should be gone into before a combination of some kind had been proved.

On this subject, Baird cited M'Nally, 614; and Buchanan briefly observed, that he considered it not a question of evidence, but whether a court of this country had a right to dispense with the law of the land; that the letter tended to prove overt acts not laid in the indictment, and that its admission was contrary to settled principles. The argument was enforced by Evans, who cited Chitty, 951.

Brown, contra, contended against the recognition of principles as deduced by the opposite counsel, and cited Tomlin's Index, 48, Archbold, 62, 268, and was about to proceed, when the court intimated it to be unnecessary. Et per Cur.:

"I consider it settled in Pennsylvania, that in conspiracies, after proper foundation has been laid, secondary evidence may be introduced, even in facts in furtherance of the charge, though not laid in the indictment; and the court is to say whether such foundation has or has not been laid; and it does appear to the court that such foundation has been laid."

The prosecution then called David Moser, who, it appeared, had acted as the porter of Henry Zeller, and re-

READING,
Nov. 1823.

The Com'th
v.
Boyer and
others.

ceived goods for him from sundry merchants of the city of Philadelphia. He was objected to; and Evans observed, that as the overt act was laid in the county of Berks, the prosecution was precluded from proving a delivery or receipt in the county of Philadelphia.

*Hayes*, contra, contended that in the case of conspiracy this strictness was not necessary, and cited Tomlin's Index, 48. The further argument of this point was deferred until the next morning, when Evans again objected to the witness being heard, and, in order to give a short view of the ground upon which he founded his objection, proposed to state the principles, precedents and authorities from which it was drawn; and, after recurring to the indictment, stated that the only question before the court was, whether, when the overt act had been laid in the county of Berks, evidence could be given of an overt act committed in the city of Philadelphia? He contended that on principles of analogy this testimony was inadmissible; that in all indictments, great and small, the certainties of time and place were indispensable. 1st. To enable the party accused to know how to prepare his defence; and, 2d. That he may plead in bar or abatement to a subsequent indictment for the same offence. That with regard to conspiracies in Pennsylvania, this was strongly the case, and the "*adhunc et ibidem*," the time and place, must be fully and clearly laid down. Here, however, the court intimating that a determination had been formed which would remain unshaken, he was induced to shorten his argument; and the witness was heard.

Hood Irvine was then called up, and stated, that after the failure of Henry Zeller, and development of some sus-

picious circumstances, he went to his brother's house, found him lying on the bed, and immediately calling for pen, ink and paper, took down what he termed "a confession."

He however admitted, that he had only minuted such parts as to him seemed material; and it also rather appeared, that some kind of inducement had been exerted over Zeller's mind to influence him to make the confession.

To the admission of this paper, or to the parol recollections of Hood Irvine, the counsel for the defendants strongly objected; and Evans contended that of all kinds of evidence confession was the worst; that it was a principle of law, that no confession could be read, unless obtained with the unbiassed consent and free will of him from whom it was taken; and that even then it was not evidence unless the whole of the party's declarations at the time had been reduced to writing; and cited Philips' Evidence, 82.

Darling also cited Chitty's Criminal Law, 68., which he deemed decisive.

The recollections of Hood Irvine were objected to by Buchanan, who contended that if a written confession is in being, or even has been taken and lost, no parol proof of the contents of that confession, or of the party's declaration, can be afterwards received.

Hayes, contra, admitting the law, argued, that it did not apply; that as to promises or persuasion, if any had been used, they were not communicated to Zeller, until after he had fully disclosed himself; and that all that

was necessary was for Hood Irvine to take down the essential parts of his confession. Sed per Cur:

" It has been the practice in Pennsylvania for a justice of the peace to take, judicially, the confession of a prisoner; and such confession, having the other requisites, may always be read in evidence; but I do not think that a private individual has authority, or that it would be advisable to allow them the privilege, to take the confession of a person charged with the commission of an offence; and moreover, there does appear that some kind of influence had been exerted over Zeller's mind; I therefore cannot allow any part of this matter to go to the jury."

Subsequent to this, William B. Emerick was called, and about to state, that John K. Boyer, in his hearing, declared, that one other of the defendants had proposed a plan to defraud, similar to the one afterwards carried into execution; but this was objected to, and the court requested the counsel for the prosecution to cite the authority which induced them to insist upon the examination of the witness. 6 City Hall Recorder 43. and Archbold, 68., were given by Brown as the authorities upon which he rested.

Buchanan, after admitting, for a moment, that Hunt's trial, alluded to by the Recorder, even under the circumstances with which it was accompanied, could be read as authority, still contended that it did not bear upon the present case; and was entering fully on the argument, when the court informed him the question was plain, and that the evidence could not be received.

Several other minor points were agitated and argued, but none important enough to claim particularly notice;

and on the 8th inst. the case on the part of the prosecution was closed.

The defence was opened by Hubley, who stated that he had hoped, after all that had passed, the prosecution, as to some of the individuals, would have been withdrawn; that in fact the prosecutors were the conspirators; that he would show that several of the defendants, at the time of the alleged conspiracy, were at enmity, and that the whole were perfectly innocent of the charge.

The case then proceeded rapidly towards a conclusion; but before it terminated, and in the course of the examination of Mr. Hubbs, the defendants' counsel attempted to ask him questions rather tending to impeach his credibility, which was objected to on the ground of his being their own witness; that was denied; and although the witness was subpœnaed and subsequently attached by the defendants, yet Buchanan contended that as the plaintiffs had called and examined him first, they had therefore adopted him, and had made him their own witness; and so the court decided, ordering the witness to answer.

On the 10th, the defence, which consisted chiefly of rebutting and explaining testimony, was closed, and the case opened to the jury by Hayes.

Biddle and Buchanan then summed up for the defendants, and the whole was closed by Brown for the prosecution. A lucid and learned charge was given by his Honour the President of the court, when the jury retired, and after an absence of about 12 hours returned with a verdict of NOT GUILTY; and the defendants were sentenced to pay the costs of the prosecution.