SYLVESTER McCARNEY, Plaintiff in Error, *v.* THE PEOPLE OF THE STATE OF NEW YORK, Defendant in Error.

An indictment for larceny averred that the stolen property was owned by "a body corporate," the name of which was given, "organized and existing under the laws of the State of New York." On the trial the people proved the due organization and existence of the corporation named under the laws of the United States. *Held*, that the averment of incorporation under the laws of the State of New York was surplusage that need not be proved ; that all that was necessary to be averred and proved was that the owner was a corporation, having the name given to it in the indictment.

It did not appear that the prisoner was present at the warehouse from which the property was taken, or in its close vicinity, but there was proof upon the trial tending to show that he had part in planning the theft and in learning the situation of the premises and the ways of the keeper

thereof. That the one who was in fact engaged in taking the property sent the porter of the warehouse to the house of the keeper with a letter, and promised a reward, upon his calling, after the delivery of it, at a specified street and number, and that on reaching the street, while searching for the number, he met the prisoner and conversed with him about the keeper and his whereabouts. *Held*, that the testimony was sufficient to authorize the submission of the question of the prisoner's participation as principal in the theft to the jury.

To constitute one a principal in a felony, he must be present at its commission; his presence, however, may be constructive, and this is established when it is shown that he acted with another in the pursuance of a common design and was so situated as to be able to give aid to his associates with a view to insure the success of the common purpose.

The letter handed to the watchman, a decoy letter, was received in evidence. *Held*, no error.

A telegram was offered in evidence on the part of the people; the district attorney stated he expected to show that the prisoner was once employed where he would have had knowledge of the meaning of certain marks upon it, and that if he did not by further testimony connect the prisoner with it, he " would consent that the message be stricken out." The prisoner's counsel objected that he was not then connected with it, and to the taking of it, " on the promise to strike it out." The objection was overruled. *Held*, no error, that it was a mere question as to the order of proof and within the discretion of the court.

Also, *held*, that the omission of the court on its own motion to strike out this evidence upon failure of the prosecution to connect the prisoner with it was not error; that it was for the prisoner to ask to have the evidence, if he so desired, stricken out, or to request the court to charge the jury to disregard it, and his omission to do so was a waiver of his right.

*People* v. *Parish* (4 Den. 153), *Furst* v. *S. A. R. R. Co.* (72 N. Y. 542), distinguished.

A witness for the prisoner was shown, on cross-examination, a copy of a telegram, and was asked if he received it. This was objected to, as having nothing to do with the trial and as immaterial. The objection was overruled. The telegram was not read or offered in evidence. *Held*, no error.

(Argued December 13, 1880; decided January 18, 1881.)

ERROR to the General Term of the Supreme Court, in the fourth judicial department, to review judgment entered upon an order made October 7, 1879, affirming a judgment of the Court of Sessions, in and for the county of Erie, entered upon a verdict convicting the plaintiff of the crime of grand larceny.

The indictment charged the plaintiff in error with stealing twelve barrels of whisky, which were averred to be the property of the "Farmers and Mechanics' National Bank of Buffalo, then and there being a body corporate organized and existing under and by virtue of the laws of the State of New York." The further facts are sufficiently set forth in the opinion.

*A. G. Rice* for plaintiff in error. The variance between the indictment and proof as to the ownership of the stolen property is fatal to the conviction. (*McGary* v. *People*, 45 N. Y. 153; *People* v. *Slater*, 5 Hill, 401; *Smith's Case*, 5 City Hall Recorder, 106; Barb. Cr. Law [2d ed.], 170; 5 Park. Cr. 330; 2 Arch. Cr. Law, 257, 265–268; 2 Russell on Crimes, 787, 788, note.) To convict the defendant as a principal, it was necessary for the people to establish that he was present, or so near as to be able to direct or assist those who committed the act; that he aided, assisted, abetted, or encouraged those who acted and were present. (*Ward* v. *People*, 6 Hill, 144; Barb. Cr. Law [2d ed.], 281, 282.) The defendant might have been convicted as an accessory before the fact, but not as a principal, either in the first or second degree. (4 Park. 234; 5 id. 119; 23 How. Pr. 93.) It was error to admit the letter and the dispatches without first connecting the accused with them. (*Ward* v. *Wash. Ins. Co.*, 6 Bosw. 229; *Myers* v. *Malcolm*, 6 Hill, 292; *People* v. *Parish*, 4 Denio, 153; *Luby* v. *H. R. R. R. Co.*, 17 N. Y. 131.)

*Robert C. Titus*, district attorney, for defendant in error. The statement in the first count of the indictment that the corporation was "organized, and existing under and by virtue of the laws of the State of New York," is surplusage, and will be rejected. (*People* v. *Gilkinson*, 4 Park. 26; *Critchten* v. *People*, 6 Park. 370; *People* v. *Jackson*, 8 Barb. 637; 2 Leach, 186, 248; Leach's Cr. [old ed.] 113; Roscoe's Crim. Ev. 88; 1 Arch. Cr. Law, 83, note 1; *Com.* v. *Hunt*, 4 Pick. 252; *U. S.* v. *Howard*, 3 Sumn. 12; *People* v. *Davis*, 21 Wend. 309; *Johnson* v. *People*, 4 Denio, 364; *Smith* v.

*State*, 28 Ind. 321; 49 Cal. 342; 1 Whart. Cr. Law, § 622; *People* v. *Bransley*, 32 N..Y. 525.)  To constitute one a principal, the act need not have been done by his own hand, nor is it necessary that he should be present at the commission of the offense.  (1 Colby's Cr. Law, 17, 18; 1 Whart. Cr. Law, § 112; *Adams* v. *People*, 1 Conn. 173; 3 Denio, 190.)  He must be present, either actually or constructively, aiding and abetting, or near and ready to render assistance should occasion require.  (1 Colby's Cr. Law, 20.)  It is not necessary to prove that the party actually aided in the commission of the offense, if he watched for his companion, and waited at a convenient distance.  (1 Whart. Cr. Law, § 116.)  Any participation in a general felonious plan, provided such participation be concerted, and there be a constructive presence, is enough to make one a principal.  ·(1 Whart. Cr. Law, 118.)

FOLGER, Ch. J.  The averment in the indictment was that the property stolen was owned by a body corporate.  It named the corporation by its true corporate name.  It might have stopped there; for all that is needed in an averment of ownership in a corporation is to state the fact of ownership in a corporate body, and to give the name of the corporate owner correctly. The indictment went on to aver that it was a corporate body organized and existing under the laws of the State of New York.  On the trial, the people proved by documentary evidence the due organization and existence of the corporation under the laws of the United States, by the name set forth in the indictment.  There was no objection made to the evidence thereof, that it was a variance from the averments of the indictment.  When the people rested, the prisoner moved to quash the indictment and that he be discharged, on the ground that there was no proof that the property was in the ownership of a corporation organized under the laws of the State of New York, as was averred in the indictment.  After the jury had given in their verdict of guilty, the prisoner moved to arrest judgment on the same ground.  And this raises the question whether the questionable averment in the indictment was sur-

plusage that need not be proved. Allegations that need not be proved are surplusage, and may be rejected. It was necessary to prove in this case that the owner of the property was a corporation, and that it existed by the name given to it in the indictment. To establish that fact, it was not necessary to prove that it was created under the laws of the State of New York; for, as we have seen, it was fully established without. All that was needed for making out an owner of the property was proved. All was proved that was essential to have been averred in the indictment to have made a substantial and formal allegation of ownership and of the owner. Nor were the people confined to proof of an organization under the laws of this State, unless the unnecessary averment thereof, having been needlessly made, thereby became a material ingredient in the description of the owner, requisite for subsequent identification. The object of a description with certainty of an injured party in an indictment is to identify the particular fact or transaction on which the indictment has been founded. This is, that the accused may have the benefit of an acquittal or conviction thereof, if thereafter again accused for the same offense. Now, can there be any doubt, if the prisoner should be a second time accused of stealing this property, as that of the Farmers and Mechanics' National Bank of Buffalo, but that the identity of the owner, and that of the transaction, would be apparent? It seems to us that there would be none. The averment was then surplusage, that might be disregarded.

There was not proof that the prisoner was present at the warehouse from which the property was taken; or that he was in close vicinity to it. There was proof that there was a man at the warehouse that the jury might have found was the guilty taker; but it was not conclusive. They might have found that all of the immediate actors were innocent of the intent to steal. On this state of the proof the prisoner claimed that he could not be held as a principal offender, and if at all, only as an accessory before the fact. To constitute one a principal in a felony, he must be present at the commission of it. But he need not be so near as to be an eye and ear witness of

the criminal act. His presence may be constructive, and that constructive presence is made out when it is shown that he acted with another in the pursuance of a common design; that he acted at one and the same time for the fulfillment of the same preconcerted end and was so situated as to be able to give aid to his associate, with a view to insure the success of the common enterprise. A waiting and a watching at a convenient distance is enough; as if, in a case of larceny, he be placed where he may learn of the whereabouts and movements of the custodian of the property, and be prepared to lure him away, or to retard him, or to give timely warning of his approach. Now there was proof here tending to show that the prisoner had part in planning the theft, and in spying out the lay of the premises where the property was stored, and in learning the ways of the keeper of them. It was in proof that one who was in fact engaged in the taking of the property sent the porter of the warehouse to the home of the keeper of the goods with a letter, and promised the porter a reward on his calling, after the delivery of it, at a given number and street. On his reaching that street, and in quest of that number, he met the prisoner, who spoke to him, and they conversed of the keeper and his whereabouts. (*Com.* v. *Lucas*, 2 Allen, 170; *Com.* v. *Knapp*, 9 Pick. 496.) The proof is not strong to show that he lay in wait to aid or to warn. It was enough, however, to go to the jury, in connection with the testimony as to his preconcert in the plan and his aid in the prior arrangement. It was enough to give legal warrant to an inference by them that he was at the place to which the porter had been directed, with the purpose of learning of the whereabouts and movements of Neff, the warehouseman, and of acting upon the knowledge thus got, as would best aid his comrade either to succeed or to fly, and that the latter was aware of that support in the undertaking. The court was not called upon to say to the jury that there was no proof for their consideration of facts that if established would make him a principal in some degree.

We think that the Watson letter was properly received in evidence. It came from the hand of one of the men who took

away the property.    It was plainly a deceptive or decoy letter. It tended strongly to show that the taking of the property was feloniously intended.    It was one of the acts that were done at the time of the taking, serving to characterize the transaction. Had the man who sent the watchman with it sent by oral message the same words that the letter contained, that message would have been as admissible as was his request for the letter to be carried.    That it was written, made no difference in its competency as evidence of intent.    Proof of the taking was competent, though the prisoner was not present assisting in the act, and though other proof was needed to connect him with it. So proof of an act concurrent with the taking, and competent to show the intent thereof, was competent against the prisoner, though other proof was needed to connect him therewith.

A telegraphic message was taken in evidence without then or afterward connecting the prisoner with it.    When it was offered by the people, the district attorney stated that he expected to show that the prisoner was once employed where he would have had knowledge of the meaning of certain marks upon it, and that if he did not by further testimony connect the prisoner with it, he "would consent that the message be stricken out."    The prisoner objected, on the ground that the prisoner was not then connected with it, and to the taking of it "on the promise to strike it out" on failure to connect the prisoner with it.    Thus the matter stood at the trial.    We must take the place of the trial court at that stage of the proceedings, to determine whether it was in error in receiving the paper.    Of course, if the district attorney had brought other proof that did connect the prisoner with the message, there would be no merit in the exception.    He alleged that he could. Now if he had it in his power to do it, and the court knew that he had, it was a mere question of the order of proof, whether he should connect the prisoner with the message first, and prove the sending of it afterward, or *vice versa*.    As the court did not know it, had it not the power to take the assertion of counsel that he expected to supply the link that would fasten to the prisoner ?    And was it not then also a mere question of

order of proof? When it can be made to appear that other proofs will probably be given which will make the questioned evidence material, the court, in the exercise of discretion regarding the order of proofs, may allow an inquiry to be made. (Per WOODRUFF, J., *Cass* v. *N. Y. & N. H. R. R. Co.*, 1 E. D. Smith, 525.) The court need not at once exclude relevant testimony because it does not at once establish the issue to which it relates. (Per ROBERTSON, C. J., *Murphy* v. *Boker*, 28 How. Pr. 263. See, also, *Chapman* v. *Brooks*, 31 N. Y. 88.) An ancient will may be read in evidence without proof of its execution, if there has been a possession under it of thirty years. Yet it is in the discretion of the judge to permit the will to be read as an ancient will before the needful possession under it has been proven. (*Doe* v. *Passingham*, 2 Carr. & Payne, 440, cited per ALLEN, J., in *Staring* v. *Bowen*, 6 Barb. 115.) Fraud in a vendor, to affect the vendee, may be proved before knowledge and concurrence in the fraud by the vendee is shown, though both be necessary to affect the latter. (*Cotton* v. *Haskins*, Litt. Sel. Cas. 151, 152.) A sworn copy of a deed, or other secondary evidence, on the ground of loss, may be received without waiting for proof of existence or execution. (*Allen's Lessee* v. *Parish*, 3 Hammond [Ohio], 107.) And though the court know not, as seldom can it know, that the needful connecting proof will be forthcoming, may it not rest for awhile on the assertion of reputable counsel of his expectation that he can produce it? And is it not then also a mere question of the order of proof? That a court may base its action upon the avowals and declared purposes of counsel is shown by *Dunn* v. *The People* (29 N. Y. 523). It seems to us that it would too much hamper the trial courts in their proceedings, if they were much restricted in the exercise of a discretion in the order in which proof should be received. There must be a discretion rested in them, in such case, for the convenience and dispatch of business, and often for a proper understanding and appreciation of the testimony. As was said by NELSON, C. J., in a kindred matter, in *Morris* v. *Wadsworth* (17 Wend. 103, 119), the question must always depend so

much upon the exercise of a sound discretion that it would be unsafe to lay down any general rule for the disobedience of which an exception should be allowed. (See, also, *Flynn* v. *Murphy*, 2 E. D. Smith, 378; *Phil. & Tr. R. R. Co.* v. *Stimpson*, 14 Peters, 463, per Story, J.) Truly it is at times, as it was here, a delicate discretion; to be used with sound judgment and great care for the case of the prisoner, lest he be jeoparded with the jury by testimony that may never properly have a place in their consideration. And it may be well often to doubt whether the zeal of counsel does not lead to an expectation of forthcoming connecting testimony, when it does not exist. We are not able to see error in the taking of this message in evidence, under the circumstances shown. The prisoner further claims that it was error in the court that it did not, on its own motion, strike out this testimony, when it had become apparent that the message was not connected with the prisoner. It might be a sufficient though a technical answer to this claim, that there is no direct exception that raises this point. But we will not rest it there, for the argument of the prisoner is, that the ruling in of the message over his objection, on the assertion of the district attorney, put the duty on the court, of itself, after his failure to connect it with the prisoner, to free the case from the objectionable proof. In putting this argument he mistakes in stating the occurrence at the trial; saying that the district attorney, and by implication the court, promised to strike out the testimony on failure to connect it. This is stronger than the fact. The error-book shows that the district attorney's pledge was, that he would consent that it be stricken out. There being no error in receiving the message at first, as a discretionary direction of the order of proof, that it should be stricken out afterward if not made material, was a right of the prisoner which he might ask for or waive. It was a privilege not to be denied to him, nor the use of it to be forced upon him. It was for him to call upon the court to put the case right before the jury, by striking out the testimony, or by charging them to disregard it. There is doubtless a general duty upon a trial court to see that a prisoner has his rights before it;

but when he appears with skilful counsel to aid him, it is not error to suppose that all will be done in his behalf that caution and ingenuity can suggest, and the court is not called upon to watch that no lapse like this takes place. A passive course, that does not refuse a motion or request of the prisoner, is not the committal of error. The party against whom such testimony is introduced is protected against prejudice by his right to call on the court to instruct the jury to disregard it. Where he fails to do this, the court may assume that he does not think it of importance enough to need that caution. It is no ground of complaint, in such case, that the court has not volunteered to warn the jury, nor a reason for a new trial, on the ground of an over-sight. (28 How. Pr., *supra.*) We think that it was the duty of the prisoner, if he deemed the immaterial testimony damaging to him, to call upon the court for affirmative action. What was said in *The People* v. *Parish* (4 Den. 153), is not applicable here, for three reasons. *First.* It was *obiter.* *Second.* It does not appear that there was an assertion at the trial that connecting proof would follow. *Third.* At bar the connecting proof suggested was that of a conspiracy; and it is a rule of stringency that there must be proof of a conspiracy before the declarations of a co-conspirator can be taken against one on trial for that offense. Yet that rule has some times been made to yield to the other, that the order of proof is in the discretion of the court. (*Comm.* v. *Boyer*, 2 Wheel. Cr. Cas. 140.) Nor is *Furst* v. *Second Ave. R. R. Co.* (72 N. Y. 542) on a parallel. There improper evidence had been received, and the defendant had excepted. It was improper to receive it when it was received; and nothing that accompanied the reception of it cured the error or held it in abeyance. The defendant had secured a technical advantage on the trial that might enable him to change an adverse result. The offer of the plaintiff to have the answer stricken out — the court making no ruling upon that offer — put no duty upon the defendant to accept, and abandon his exception or to ask a ruling from the court. It differs from the case in hand, because there the evidence was never properly received, the action objected to was always er-

roneous, and there was no duty upon the defendant to seek the correction of it, or to accept it on the proffer of his adversary.

When Thomas Glenn — who was called and testified as a witness for the prisoner — was under cross-examination, a copy of a telegram was shown to him, and he was asked if he re- ceived it. Objection was made that it had nothing to do with the suit and was immaterial. The telegram was not read or offered in evidence. The only fact put in evidence was that the witness had received it. We do not see that the fact had direct bearing upon the case of the prisoner. But it was asked for on the cross-examination of a witness who had been under arrest on supposition of complicity in the larceny, and on whose examination the prisoner had been a witness. Latitude may be allowed in the cross-examination of a witness, and as no use of the fact was afterward made or suggested, we do not see that it was error to receive it.

These are all the allegations of error presented to us by the plaintiff in error. None of them are fatal to the judgment, and it should be affirmed.

All concur.

Judgment affirmed.